No.——

First Circuit

---

## SHAHEE JONES FURNITURE & HARDWARE CO., INC., v. WEBER KING MFG. CO.

### AND

## HAYSLIP v. WEBER KING MFG. CO.
### (Consolidated for Trial)

---

(May 8, 1928. Opinion and Decree.)
(June 12, 1928. Rehearing Refused.)

---

*(Syllabus by the Editor)*

1. Louisiana Digest—Automobiles—Par. 5, 7(b); Railroads—Par. 64, 65.

Where the driver of a truck slows down upon approaching a railroad crossing thus leading the train crew to believe that he was going to stop, and then drives directly in front of the moving train, the negligence of the driver was the proximate cause of the accident continuing right up to the time of the collision.

Appeal from the Parish of Vernon. Hon. Hal. A. Burgess, Judge.

Action by Shahee Jones Furniture and Hardware Co., Inc., against Weber King Mfg. Co., and Alton D. Hayslip against Weber King Mfg. Co. Consolidated for trial.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

A. B. Cavanaugh, of Leesville, attorney for plaintiff, appellant.

Thompson and Ferguson, of Leesville, attorneys for defendant, appellee.

LECHE, J. Alton D. Hayslip, one of the plaintiffs was employed as chauffeur on a delivery truck, by the other plaintiff, the Shahee Jones Furniture & Hardware Company, Inc., and while so engaged, the truck collided with a train of the defendant company. Two suits were filed to recover damages, one by the Shahee Jones Company as owners, for the partial wreck of the truck, and the other by Hayslip, for personal injuries. The two suits were consolidated for trial so that it was only necessary to take one record of evidence. The trial Judge refused the demands of both plaintiffs and they have appealed.

Hayslip was sent in the truck to some camp, to deliver merchandise, and on his way back to his employer's store in Leesville, he had to cross two railroad tracks owned by the defendant and used by its trains in the pursuit of its business. The road on which Hayslip was traveling is a much used public highway. It runs approximately east and west and it is intersected by the two railroad tracks of defendant, which run approximately north and south. The intersection of the highway and railroad tracks is within the eastern limit of the town of Leesville, but there are no buildings or streets here, and

the place is virtually in the open country. There are "stop" signs along the highway on each side of the railroad tracks. The first track Hayslip had to cross is the main line of the railroad, then the next track is a switch or service track almost parallel with the other but slightly converging towards the main line which it joins a short distance south of the highway. The distance from the center of the main line track to the center of the switch track on the highway is not given with any degree of precision, but it is estimated to be about seventy-five feet.

Hayslip says that he slowed down the truck almost to a stop before reaching the first or main line track then continued over to the second or service track at a speed which he estimates at four miles an hour, but did not stop. As he reached the second track he collided with a box car which was being pushed by a locomotive of defendant, from north to south. The truck was shoved sideways along the track for a distance of about forty feet south of the highway, was badly damaged, and Hayslip was injured about his foot, but not very severely. The locomotive was headed south and the box car was being propelled ahead of it. The engine was at the time loudly emitting steam through the safety valve over the boiler, a brakeman was standing on the east side of the pilot of the engine and the locomotive bell was ringing as the locomotive and box car were nearing the crossing over the highway. The speed of the train is estimated at ten miles an hour.

When Hayslip reached the "stop" signal on the highway, there was nothing to obscure or obstruct his vision of the two railroad tracks for quite a distance to the north, or on his right side. He could not have failed to see the incoming locomotive and box car if he had looked, and he could

not have helped hearing the locomotive if he had listened, unless he is deaf, a physical affliction which ˙ he expressly disclaims. The preponderance of the evidence is so great that he did not observe these two ordinary rules of prudence, that in justification of this clear negligence on his part, he says that the woods beyond the train were dark and almost of the same color as the box car, and he could not therefore have seen the approaching train. He admits, however, that after crossing the first track, his whole attention was concentrated on the crossing ahead of him, on account of its bad condition, and that he did not look up the switch track on which the train was approaching.

The flagman or brakeman who was standing on the pilot of the engine, whose view of the highway on the east side of the train was also unobstructed, says that he saw Hayslip approaching with his truck, that Hayslip slowed down and appeared to be preparing to stop, but that he did not stop, and when he realized that Hayslip would not stop, it was too late to check the momentum of the train and prevent the collision. This testimony of the brakeman, which is uncontradicted, disposes of the plea that defendant had the last clear chance to avoid the accident.

Plaintiff in argument pleads the negligence of defendant for not having had a guard on the forward end of the box car when it was being propelled by the locomotive, as required by the ordinance on that subject, in the town of Leesville. There is no platform or safe place for a flagman to ride on the front of a moving box car and the custom is to place such guard either on top the car, or to make him stand on one of the iron ladders on either side of the box car. But the nonobservance of this precautionary measure required by the town ordinance, is not the proximate cause of the collision in this case. If there had been a guard on top of the box car or on the iron ladder on its side, the accident could not have been avoided as it was due entirely to Hayslip's own continued negilgence.

The evidence in this case is most convincing that the collision between plaintiff's truck and the train of defendant, was due entirely to the negligence of Hayslip, himself one of the plaintiffs and an employee acting within the scope of his employment, of the other plaintiff, and there is no occasion under the evidence, to apply the last clear chance doctrine. The trial Judge in his carefully prepared reasons for judgment so found, and we fully agree with him.